D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

CHRISTOPHER TIRADO,

                        Plaintiff,

  -against-

GREG DEBOERS, SHAUN WINTER, DIEGO RIVERA,
HENRY LEMONS, CHARLES HYNES,

                        Defendants.

-------------------------------------------------------------- X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 24 2013 ★
BROOKLYN OFFICE

03-CV-5604 (ARR)(LB)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

MEMORANDUM AND
ORDER

ROSS, United States District Judge:

     Plaintiff, a pro se prisoner, filed the instant suit pursuant to 42 U.S.C. § 1983, alleging that he was unlawfully held by defendants at the District Attorney's Office in Brooklyn, before being arrested by New Jersey police and subsequently tried for murder in New Jersey. Magistrate Judge Lois Bloom stayed the action pending resolution of plaintiff's criminal trial. Years after plaintiff was convicted, defendants notified the court and the stay was lifted. Defendants now move to dismiss the complaint. Because I find the complaint unclear about the constitutional violations alleged, I grant defendants' motion to dismiss without prejudice. Further, for reasons explained below, I dismiss plaintiff's Miranda claim and dismiss defendant Charles Hynes from the case with prejudice. However, I grant plaintiff leave to replead his remaining claims, and direct the parties to Judge Bloom for a conference to discuss whether, and if so, how to proceed on those claims. See Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000) (remanding to permit amendment of complaint); Nunez v. Herbert, No. 03-CV-93A, 2007 WL

965437, at *1 (W.D.N.Y. Mar. 30, 2007) (dismissing complaint, but permitting amendment).

## BACKGROUND

Plaintiff filed his complaint on November 6, 2003, Dkt. #1, alleging in relevant part:

> On October 28, 2001, the Defendants Greg Deboers, and [Shaun Winter] did in their official positions as Special Investigators of the Brooklyn District Attorney[']s Special Investigations Unit come and pick . . . up plaintiff: Christopher Tirado, from the custody of the Cliffside Park New Jersey Police Department. . . . The defendants had no reason to pick up the plaintiff, and there was no warrant for the arrest of the plaintiff from the state of New York, nor was the plaintiff wanted for questioning for any crimes in the state of New York. The defendants came and took the plaintiff from the custody of Cliffside Park Police, denying the plaintiff his freedom, denying the plaintiff access to his home, denying the plaintiff access to needed medication, denying the plaintiff access to phone calls legal or personal, illegally incarcerating the plaintiff, and illegally extraditing the plaintiff across state lines from the state of New Jersey to the state of New York. . . . Plaintiff was brought to the Brooklyn district Attorney[']s Office and placed in a "holding cell" for several hours being coerced to take a "Polygraph Lie Detector Test" by Greg Deboers, [Shaun Winter], Diego Rivera, And several other personnel of the Special Investigations Unit, including the Commander whose name plaintiff is unable to remember at this time. Defendants never read plaintiff his Miranda warnings. Defendants held the plaintiff in custody from 9 a.m. until 7 p.m. at the behest of the Bergen County [New Jersey] Prosecutor[']s Office while the Bergen County Prosecutor[']s Office got an arrest warrant for the plaintiff. The plaintiff was arrested by the Bergen County Prosecutor[']s Office as a result of being illegally detained by the defendants. As a result of the illegal incarceration by the defendants, plaintiff was coerced into making statements without being read Miranda warnings. Plaintiff was illegally extradited back to the state of New Jersey, as a result of defendant's illegal incarceration, and plaintiff has been illegally incarcerated since.

Id. at 4-5. Plaintiff sought release from "his illegal incarceration," an investigation into defendants' conduct, and damages in the amount of $100 million "for pain, suffering, mental anguish, and loss of family ties." Id. at 6. The commander whose name plaintiff was unable to remember was later identified as Henry Lemons. Dkt. #8.

Defendants filed a motion to stay the action on April 15, 2004, stating that "the

2

underlying criminal case from which plaintiff's civil suit derives is still pending in the Bergen County Supreme Court." Dkt. #13, at 1. Defendants urged a stay pending "[r]esolution of the parallel state criminal court proceeding." Id. Plaintiff opposed the stay, stating, "For the Federal Court to grant a stay pending outcome of my criminal trial defeats part of the purpose of this civil action, as one of the many reasons I bring this action is to solve the issue of the claims being made in the criminal court." Dkt. #15, at 2. He added:

> [T]he criminal prosecution of myself in the state of New Jersey arises out of the circumstances I state occurred in my Civil Action namely: the illegal extradition, illegal detaining, and subsequent illegal arrest of myself by the Brooklyn, New York District Attorney[']s Special Investigations Unit and its Officers. If . . . there were no illegal extradition, illegal detaining, or illegal arrest, there would not be the current pending criminal matter.

Id. at 3. Judge Bloom granted the motion to stay, noting that "should Mr. Tirado be convicted, the outcome of the criminal proceeding could negate an essential element of plaintiff's Section 1983 claim." Dkt. #17, at 2. I affirmed Judge Bloom's decision to stay the proceedings. Dkt. #19.

Plaintiff was convicted of murder in the first degree on September 9, 2005, in New Jersey Superior Court. Dkt. #22, at 2; see State v. Tirado, 2009 WL 259356, at *1 (N.J. Super. Ct. App. Div. Feb. 5, 2009).[1] However, neither party informed the court of this fact until September 12, 2012, when defendants notified the court of the conviction by letter. Dkt. #22. Judge Bloom then lifted the stay and directed plaintiff to notify the court if he intended to proceed with the action. Dkt. #25. Plaintiff responded that he did wish to proceed. Dkt. #26. Defendants

---

[1] The court takes judicial notice of the appellate decision affirming plaintiff's conviction. See Fed. R. Evid. 201(b); Gibson v. City of N.Y., No. 96 CV 4958, 1998 WL 960303, at *3 (E.D.N.Y. Dec. 9, 1998) (taking judicial notice of appeal for limited purpose of recognizing plaintiff's criminal conviction).

3

thereafter filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. #33.

## DISCUSSION

I.   *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although still subject to the facial probability standard, a pro se complaint must be construed liberally and is held to less stringent standards than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Nevertheless, pro se plaintiffs are not excused from the normal rules of pleading and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." Geldzahler v. N.Y. Med. College, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Fed. Practice § 12.34[4][a] at 12–72.7 (2005)). However, if the complaint fails to state a claim, "[a] pro se plaintiff, particularly one bringing a civil rights action, should be afforded an opportunity fairly freely to amend his complaint." Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980).

II.   *Leave to Replead*

Preliminarily, there appears to be some confusion about the nature of plaintiff's claims. Defendants moved to dismiss in part on the grounds that, to the extent that the complaint raises claims of false arrest and malicious prosecution, those claims are (a) barred by Heck v. Humphrey, 512 U.S. 477 (1994); and/or (b) preluded by collateral estoppel, insofar as they seek

relitigation of issues adjudicated in the state criminal proceeding. Dkt. # 37, at 12-15. In his opposition brief, however, plaintiff argues that defendants have misunderstood his claim. He states that his claims relate only to the conduct of New York officials and his allegedly unlawful seizure and transportation from New Jersey to New York. See Dkt. #36, at 4-5. Accordingly, plaintiff argues, neither Heck nor the relitigation bar can apply, since plaintiff was not charged, tried, or convicted in New York. Id. at 5. In reply, defendants maintain that plaintiff's false arrest and malicious prosecution claims must fail, but appear to abandon their prior grounds for dismissal. Dkt. #38, at 4-7.[2]

Admittedly, it is not clear to the court which acts plaintiff is claiming constituted violations of his civil rights. The complaint states both that plaintiff was "illegally extradit[ed] . . . across state lines from the state of New Jersey to the state of New York" and that "Plaintiff was illegally extradited back to the state of New Jersey." Dkt. #1, at 5. It is not clear which "extradition" plaintiff believes violated his rights. The complaint also alleges that plaintiff was held, at least for some time, "at the behest of the Bergen County Prosecutor[']s Office," id.; however, it is ambiguous as to how much of plaintiff's incarceration and which of defendants' actions could be attributable to the requests of New Jersey authorities. Further, plaintiff's correspondence with the court regarding the motion to stay, though not part of the facts to be considered in deciding the motion to dismiss, also appears to indicate that plaintiff was, in part, alleging false arrest for the murder committed in New Jersey. See Dkt. #15, at 3. Although the submissions of a pro se litigant must be construed liberally and interpreted "to raise the strongest

---

[2]Defendants' new grounds for dismissal rely heavily on facts outside the pleadings, which would be more appropriately considered in a motion for summary judgment.

arguments that they suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006), here, amendment is appropriate to clarify plaintiff's claims. See Cruz, 202 F.3d at 597-98.

Plaintiff is directed to focus his amended complaint on the acts of defendants that plaintiff believes rise to the level of a constitutional violation, with caution that a § 1983 action does not provide an opportunity to relitigate issues that were resolved in the criminal case, such as probable cause for the arrest by New Jersey authorities. Plaintiff is reminded that any claim must be supported by allegations of fact that will allow the court to draw a reasonable inference that defendants are liable for a constitutional violation. The parties are directed to participate in a conference with Judge Bloom to discuss whether and, if so, how they will proceed with the amended complaint and any response from defendants.

III. *Claims Not Amenable to Amendment*

The complaint may also be construed to raise some claims that cannot be cured by amendment. Accordingly, in the interest of efficient resolution of plaintiff's viable claims, I address those claims briefly here and dismiss them with prejudice.

a. Miranda Violation

Plaintiff states that "[d]efendants never read plaintiff his Miranda warnings" and he "was coerced into making statements without being read Miranda warnings." Dkt. #1, at 5. This claim cannot stand. "The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants." United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990) (emphasis added). The failure of state officials to inform an individual of her rights under Miranda v. Arizona, 384 U.S. 436 (1966), "does not, without more, result in § 1983 liability." Deshawn E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998). "While a

defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive Miranda warnings." Id. (citing New York v. Quarles, 467 U.S. 649, 654 (1984)). "[A]ny violation of the privilege against self-incrimination occurs, not at the moment law enforcement officials coerce statements through custodial interrogation, but when a defendant's involuntary statements are actually used against him at a[] . . . criminal proceeding." United States v. Bin Laden, 132 F. Supp. 2d 168, 181-82 (S.D.N.Y. 2001); accord Verdugo-Urquidez, 494 U.S. at 264 ("Although conduct by law enforcement officials prior to trial may ultimately impair [the privilege against self-incrimination], a constitutional violation occurs only at trial."). Accordingly, "[t]he remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' [at trial] and 'not a § 1983 action.'" Deshawn E., 156 F.3d at 346 (quoting Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam)).

Here, plaintiff has claimed only that defendants failed to read him Miranda warnings and coerced him into making statements; he has not claimed that any coerced statements were used against him at trial. However, if plaintiff were to amend his complaint to add that such statements were used against him at trial, any such claim would be barred both by Heck and collateral estoppel. See Tirado, 2009 WL 259356, at *19-20 (noting plaintiff raised Fifth Amendment issue at criminal trial and affirming trial court decision not to suppress statements). Accordingly, plaintiff's Miranda claim is not cognizable in a § 1983 action and is therefore dismissed with prejudice.

    b.    Claims Against District Attorney Hynes

Plaintiff named Brooklyn District Attorney Charles Hynes as a defendant, but identifies

no alleged misconduct by Hynes in his complaint. In his opposition papers, plaintiff argues that Hynes is an appropriate defendant since the defendant investigators "were not rogue actors" and, instead, were acting "as ordered by D.A. Hynes, as part of a designed plan to unlawfully seize plaintiff. . . . It is clear from the Complaint that someone other than the subordinates was the architect that designed, planned, authorized, and implemented the boldly extra-judicial operation." Dkt. #36, at 8. These claims, even if included in an amended complaint, are insufficient to establish liability of Hynes. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676. Rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677. Plaintiff's claim that Hynes was the "architect" of an overall design or scheme, Dkt. #36, at 8, is precisely the type of claim that the Supreme Court held in Iqbal to be "too chimerical to be maintained." 556 U.S. at 680-81. While leave to replead should be granted for plaintiff to state claims against the other defendants, it is clear from the complaint and plaintiff's opposition papers that no claim could be stated against Hynes. Accordingly, he is dismissed from the case.

IV.  *Relief Sought*

Finally, in amending his complaint, plaintiff must limit the relief he is seeking to that which can be granted in a § 1983 action. Insofar as plaintiff seeks release from custody, he can do so only on a properly submitted petition for a writ of habeas corpus, which should be filed in the district where plaintiff is incarcerated or the district of conviction. See Keyes v. Juul, 270 F. Supp. 2d 327, 330 (E.D.N.Y. 2003); 28 U.S.C. § 2241(d); see generally 28 U.S.C. § 2254. This action is not a proper vehicle for plaintiff to seek release from custody.

As to plaintiff's request for an investigation into defendants' conduct, plaintiff is advised that the court does not investigate parties' claims. Should the case proceed after amendment, plaintiff will have an opportunity to conduct discovery.

Finally, with respect to plaintiff's claim for money damages, the Eleventh Amendment immunizes state official in their <u>official</u> capacities from suits for money damages. <u>See, e.g.</u>, <u>K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health</u>, 189 F.3d 273, 278 (2d Cir. 1999). Thus, to maintain a suit for money damages, plaintiff must amend his complaint to sue defendants in their <u>individual</u> capacities.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted. Plaintiff's <u>Miranda</u> claim and his claims against defendant Hynes are dismissed with prejudice. However, with respect to the remaining claims, plaintiff shall have leave to amend his complaint. <u>Cruz</u>, 202 F.3d at 597-98; <u>Nunez</u>, 2007 WL 965437, at *1. The parties are directed to participate in a conference with Judge Bloom to discuss how to proceed.

SO ORDERED.

/S/ Judge Allyne R. Ross
Allyne R. Ross
United States District Judge

Dated:  April 24, 2012
        Brooklyn, New York

9

**Service List:**

Christopher Tirado
SN #530914 / SBI #360195B
P.O. Box 861
New Jersey State Prison
Trenton, NJ 08625